IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MANNING ROLLERSON, SR., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-CV-246 |
| | § | |
| HENRIETTA GONZALEZ, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this action, Plaintiffs assert violations of their First and Fourteenth Amendment rights and make claims for damages pursuant to 42 U.S.C. §§ 1983 and 1985.[1]  They also assert state law negligence claims.  Defendants have moved for summary judgment on all claims.  For the reasons outlined below, Defendants' Motion is **GRANTED**.[2]

## I. Background[3]

Plaintiffs in this action are Manning Rollerson, Sr. ("Manning Sr."), Ruth Rollerson ("Ruth"), Manning Rollerson, Jr. ("Manning Jr."), Lionel Rollerson ("Lionel"), Manielle Rollerson ("Manielle"), and Maria Rollerson ("Maria").  Manning Jr., Lionel, Manielle, and Maria are the children of Manning Sr. and Ruth.  Only Manielle and Maria were minors at the time of the incidents made the basis of this lawsuit.  Defendants are Henrietta Gonzalez, Chief of

---

[1] Plaintiffs only cite the First and Fourteenth Amendments.  However, as Defendants point out, their Complaint makes allegations which would only be cognizable under the Fourth Amendment.

[2] The Court does not consider this Order worthy of publication.  Therefore, it has not requested and does not authorize publication.

[3] Defendants' presentation of the facts in this case is extremely detailed and supported with appropriate evidentiary references.  Plaintiffs offer very few facts, instead filling their briefing with conclusory and inflammatory statements.  Importantly, though Plaintiffs' briefing is often silent on matters clearly addressed by Defendants, it does not specifically contradict Defendants' version of the facts.  The Court has presented those facts which materially advance the analysis of this Motion and which it finds credible, keeping in mind that it must resolve all questions of fact in Plaintiffs' favor.

the Freeport Police Department, Gus Flores, Freeport Chief of Detectives, Jim Barnett, the former Mayor of Freeport, Ron Bottoms, the City Manager of Freeport, Freeport Police Officers Bryant, Cardoza, Gilliam, and Gillcrest, and the City of Freeport.[4]

In April, 2005, Freeport Chief of Police Henrietta Gonzalez initiated an investigation into illegal activity occurring at four area apartment complexes. From February 23, 2005 to April 25, 2005, the Freeport Police Department received 235 calls from the complexes, and officers arriving at the scene were often outnumbered. There had been several instances of assaults on officers in these situations. As a result of the high risk to officers, Chief Gonzalez ordered the force to patrol these areas only when backup was available. This was a temporary solution to the problem of rampant crime in these complexes, and an investigation that commenced in April, 2005 was meant to more permanently address the problem.

Chief Gonzalez met with City Manager Ron Bottoms to tell him of the Police Department's plan to send out large numbers of police officers to the problem areas to assess the situation and make arrests where they witnessed illegal activity. The officers went to the Longhorn Apartments on April 29, 2005. At the Longhorn Apartments, officers arrested several individuals with outstanding warrants, and the apartment manager issued several trespass warnings to those with no legitimate business in the complex. While at the Longhorn Apartments, several individuals fled across the street to the Port Velasco Apartments. Several officers followed them.

Upon arriving at the Port Velasco Apartments, Officer Massie found a group of about fifteen individuals gathered in darkness behind a building. Among those gathered was Manning

---

[4] Plaintiffs also assert causes of action against unidentified police officers of the City of Freeport. However, this case was filed on April 20, 2006, roughly fourteen months ago. Plaintiffs have been given time and discovery sufficient to allow them to name and serve the as yet unnamed Defendants. Accordingly, all claims against the unnamed Defendants are **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 41(b). All Individual Defendants are sued in both their individual and official capacities.

Sr. Officer Massie asked the group to come into the light so he could identify them. In response, Manning Sr. began yelling and cursing. By this time, Officer Gilliam had arrived to assist, and several other officers were coming from other parts of the complex. Manning Sr. continued yelling at Officer Gilliam, and it appeared that he was intoxicated. Officer Gilliam informed Manning Sr. that he was being arrested. As Officer Gilliam was reaching for him, Manning Sr. was attempting to get away and was using his hands in a threatening manner. Officer Gilliam allegedly brought Manning Sr. to the ground with a single punch to the face. After Manning, Sr. was on the ground, he continued to resist but was ultimately handcuffed.

While Manning Sr. was being arrested, Manielle and Ruth were vehemently protesting and trying to interfere with the arrest. After Manielle lunged at Officer Gilliam, Officer Massie pulled her back. Manielle responded by slapping Officer Massie's arms and trying to push him away. Officer Massie placed Manielle against a wall or fence and tried to restrain her while Manning Sr. was being arrested. After placing Manielle on the ground, Officer Massie ultimately handcuffed her.

At the same time, Ruth was also protesting, and several unidentified individuals were throwing dumbbells at the officers from upstairs balconies. Officer Shoemaker told Ruth to step back from Manning Sr. and Officer Gilliam. When she resisted and started being physically combative, Officer Shoemaker restrained her and brought her to the ground. Ruth complained of being brought down into an ant pile. She was later assisted to a standing position and taken to a patrol car.

Sergeant Robert Botello, upon observing the difficulty with Manielle, came to the aid of Officer Massie. However, as Officer Gilliam stood Manning Sr. up, Manning Jr. jumped on

Sergeant Botello's back, punched him in the face, and tried to take his gun. Manning Jr. argues that he was pushed before he jumped on Sergeant Botello's back.

While all of the events describe above were happening downstairs, Maria was upstairs with her brother Jonathan. Jonathan and Maria began to come downstairs when Officer Juanita Cardoza arrived and told them to go back upstairs. Jonathan complied with Officer Cardoza's request but Maria pushed past. Officer Cardoza took hold of Maria and told her to go upstairs again. This time, Maria punched Officer Cardoza in the chest and mouth, drawing blood. Officer Cardoza grabbed Maria again, but Maria refused to calm down, so Officer Cardoza forced her to the ground. Officer Chris Motley assisted Officer Cardoza in placing handcuffs on Maria, but she continued to use force and tried to run toward the other arrests that were taking place simultaneously. Officer Cardoza grabbed Maria by her arm when Maria began kicking her. Officer Cardoza eventually forced Maria to the ground, where she kept her until after the other subjects were taken into custody.

After his arrest, Manning Sr. was ultimately handed off to Sergeant Gillchrist for transport to the City lockup. While Sergeant Gillchrist escorted Manning Sr. to a police vehicle, Lionel stepped in front of him, yelling profanities. Officer Gilliam then decided to arrest Lionel. Lionel threatened to hurt Officer Gilliam if he was arrested. Officer Gilliam ultimately brought Lionel to the ground, placed handcuffs on him, and ultimately escorted him to a police vehicle for transport.

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986). Generally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. Then, the non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, "when a defendant invokes qualified immunity, the burden shifts to the plaintiff to rebut the applicability of the defense." *Breen v. Tex. A&M Univ.*, ---F.3d---, 2007 WL 1196513 (5th Cir. Apr. 24, 2007). The court must view all evidence in the light most favorable to the non-movant. *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003). If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

### B.  Individual Capacity Claims

Government officials sued in their individual capacities, including all of the Individual Defendants, are entitled to immunity from civil damages unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person would have known. *See Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987). The threshold issue in a qualified immunity analysis is whether an official's conduct violated a constitutional right, based upon the facts alleged and taken in the light most favorable to the party asserting the injury. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). If no constitutional right was violated, the Court need inquire no further. *Id.*

If, however, a constitutional violation occurred, the second inquiry is whether the official could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right. *Id.* at 206.

In conducting a qualified immunity inquiry, it is necessary to apply the legal standard to the behavior or each defendant individually since supervisory officials may not be found vicariously liable for the actions of their subordinates under § 1983. *See Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). The Fifth Circuit has noted that "supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause a constitutional deprivation; or (2) they implement unconstitutional policies that causally result in Plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F. 2d 924, 929 (5th Cir. 1992).

### C. Official Capacity Claims

Plaintiffs have filed claims against the Individual Defendants in their individual and official capacities. Claims against government officials in their official capacities are rightly treated as claims against the governmental entity employing them when that entity is also sued. *See Turner v. Houma Mun. Fire and Police Civil Serv.*, 229 F.3d 478, 482 (5th Cir. 2000). Since the City of Freeport is also a defendant in this action, there is no need to additionally assert claims against the Individual Defendants in their official capacities. Those claims are redundant, and Plaintiffs will not be prejudiced by their dismissal. Accordingly, all claims against the Individual Defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE**.

## III. Analysis

### A. Conspiracy Claims

A plaintiff may assert a private cause of action pursuant to 42 U.S.C. § 1985(3) for a conspiracy to deprive him of his civil rights. *See* 42 U.S.C. § 1985(3). In order to prevail on a § 1985(3) claim, a plaintiff must show:

> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). Plaintiffs' § 1985(3) claims fail because they fail to meet the first prong of this test—that the conspiracy involves two or more persons.

"It is a long-standing rule in this circuit that a 'corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Id.* at 653 (citing *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952). In *Hilliard*, the Fifth Circuit found this rule equally applicable to a school board. Specifically, since all members of the school board were employed by the school board, they constituted a single entity which could not conspire with itself. *See id.* The reasoning in *Hilliard* has been applied to cities by the Courts of this District, and it should likewise be applied to the City of Freeport. *See Hill v. City of Houston,* 991 F. Supp. 847 (S.D. Tex. 1998); *Thompson v. City of Galveston*, 979 F. Supp. 504 (S.D. Tex. 1997). The Court finds that since all Defendants are employees of the City of Freeport, and the City of Freeport cannot conspire with itself, Plaintiffs cannot make a claim under § 1985(3). Accordingly, Plaintiffs' § 1985(3) conspiracy claims against all Defendants are **DISMISSED WITH PREJUDICE**.

**B. § 1983 Claims**

Plaintiffs' claims based on allegations of violations of the First and Fourth Amendments are brought pursuant to 42 U.S.C. § 1983.[5]

### 1. Claims Against Supervisory Officials

As stated above, a § 1983 claim against a supervisory official can stand only if: "(1) they affirmatively participate in acts that cause a constitutional deprivation; or (2) they implement unconstitutional policies that causally result in Plaintiff's injuries." *Mouille*, 977 F. 2d at 929. Jim Barnett, the former mayor of Freeport, Ron Bottoms, the City Manager of Freeport, and Henrietta Gonzalez, the Freeport Police Chief are all supervisory officials who had no personal involvement in the alleged constitutional deprivations. There is absolutely no allegation that Mayor Barnett affirmatively participated or even knew about the events made the basis of this lawsuit. Accordingly, all claims against Defendant Jim Barnett are **DISMISSED WITH PREJUDICE**.

Plaintiffs' sole contention regarding Defendants Bottoms and Gonzalez is found in their Response to Defendants' Motion. In conclusory fashion, Plaintiffs state that "the City of Freeport, its City Manager, and Chief of Police knew or should have known of the dispatch of officers to the location in question and knew or should have known what procedure was in place to arrest unarmed, non-violent women, children, and men at the scene." Response at 10. Plaintiffs' first allegation, that Defendants Bottoms and Gonzalez knew about the dispatch of officers to the location, is undisputed. However, it is scant support for a claim of a constitutional violation as it is not indicative of personal involvement in a deprivation. Plaintiffs' second allegation, that Defendants Bottoms and Gonzalez knew or should have known about a

---

[5] Plaintiffs' Complaint alleges claims pursuant to the First and Fourteenth Amendments. However, their Response mentions claims made under the First and Fourth Amendments. Since the Fourth Amendment seems more appropriate to Plaintiffs' claims than does the Fourteenth, the Court will consider them as having been brought under the Fourth Amendment.

procedure to arrest non-violent citizens, is wholly unsupported by the summary judgment evidence. Plaintiffs have not submitted one shred of evidence indicating that an unconstitutional official policy existed, much less that Defendants Bottoms and Gonzalez implemented it or knew about it. Without more, Plaintiffs cannot maintain an action against those Defendants based on their roles as supervisory officials. Accordingly, the claims against Defendants Bottoms and Gonzalez are also **DISMISSED WITH PREJUDICE**.

Plaintiffs also assert claims against Lieutenant Gus Flores. However, they do not allege any specific facts against him. The Court can only guess that Plaintiffs are seeking to hold him liable based on his supervisory capacity. However, Plaintiffs have again not made or supported the requisites for finding liability against Lieutenant Flores. Accordingly, the claims against Defendant Flores are **DISMISSED WITH PREJUDICE**.

### 2. Fourth Amendment Claims

#### a. Claims of Manning Sr., Manielle, and Lionel

The claims of Manning Sr., Manielle, and Lionel are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). In *Heck*, the Supreme Court held that when a Plaintiff is pursuing a § 1983 claim for unconstitutional conviction or imprisonment, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 514 U.S. at 486-87, 114 S. Ct. at 2372. Manning Sr. and Lionel entered guilty pleas and were convicted of the charge of resisting arrest using force. Manielle entered a guilty plea and was convicted of the charge of assaulting an officer. The Fifth Circuit has held that under Texas law, both excessive force and unlawful arrest claims are barred by convictions for assault and

resisting arrest using force. *See Clay v. Allen,* 242 F.3d 679 (5th Cir. 2001); *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 1999) (holding that excessive force claims under § 1983 are "barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events"); *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir. 1999) (holding that a claim of excessive force is necessarily inconsistent with a criminal conviction for aggravated assault of a public servant); *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996) (holding that *Heck* bars claims of excessive force when Plaintiff has been convicted of "battery of an officer"). Accordingly, the Fourth Amendment claims of Manning, Sr., Manielle, and Lionel are **DISMISSED WITH PREJUDICE**.

### b. Unlawful Arrest

In order to make a claim for unlawful arrest pursuant to § 1983 and the Fourth Amendment, a Plaintiff must allege facts showing an officer lacked probable cause for the arrest. Government officials are protected from charges of wrongful arrest where a reasonable official would believe probable cause existed. *See Brown v. Lyford*, 243 F.3d 185 (5th Cir. 2001) (citing *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).

#### *Ruth Rollerson*

The evidence shows that Billy Wayne Shoemaker arrested Ruth. Officer Shoemaker has not been named as a defendant in this case. There are no other officers who were allegedly involved in Ruth's arrest. Accordingly, Ruth cannot make a claim for wrongful arrest. However, the Court finds that if Officer Shoemaker were a defendant in this case, he would be entitled to qualified immunity. Officer Shoemaker's affidavit indicates that he saw Ruth being physically combative with Officer Gilliam while he was arresting Manning Sr. This is enough to provide probable cause for her arrest, and Plaintiffs have not rebutted this testimony with any

evidence of their own.  Accordingly, Ruth's claims for wrongful arrest against all Defendants are **DISMISSED WITH PREJUDICE**.

### *Manning Rollerson, Jr.*

The evidence shows that Officer Robert Botello arrested Manning Jr.  Officer Botello has not been named as a defendant in this case.  There are no other officers who were allegedly involved in Manning Jr.'s arrest.  Accordingly, since none of the named defendants were involved in his arrest, Manning Jr. cannot make a claim for wrongful arrest.  In any event, Officer Botello had probable cause for Manning Jr.'s arrest.  Officer Botello's testimony indicates that Manning Jr. jumped on his back, punched him in the face, and tried to take his gun from his holster.  Manning Jr. does not dispute that he punched Officer Botello.  This is enough to provide probable cause, and Plaintiffs have not rebutted this testimony with any evidence.  Accordingly, Manning Jr.'s claims for wrongful arrest against all Defendants are **DISMISSED WITH PREJUDICE**.

### *Maria Rollerson*

Officer Cardoza arrested Maria, and he is therefore the only named Defendant against whom Maria can assert a claim for wrongful arrest.  However, the evidence shows that Officer Cardoza had probable cause to arrest Maria.  Specifically, Maria punched Cardoza in the chest and mouth, drawing blood.  Plaintiffs again have not rebutted this testimony with any evidence.  Accordingly, Maria's claim for wrongful arrest is **DISMISSED WITH PREJUDICE**.

### c. Excessive Force

In order to make a claim for excessive force, a plaintiff must show; "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."  *Tarver v. City of Edna*, 410 F.3d 745, 751

(5th Cir. 2005) (citing *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994)). While significant injury is not required, the injury must be more than *de minimus*. *See id.* To determine the reasonableness of a defendant's actions, the Court pays "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.* at 753 (citing *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998)).

### *Ruth Rollerson*

The following is Ruth's **entire** argument in support of her excessive force claim:

> Plaintiff Ruth Rollerson testifies that she was hit was [sic] such force by Officer Bryant that she was lifted off her feet. "And then an officer grabbed me from behind. . . And then Chris Bryant, I didn't even know the man was coming. This officer moved and when he moved, Chris Bryant hit me so hard it lift [sic] me up off the ground. It was so much force. He landed on top of me

Pls.' Resp. at 14 (citing Dep. of Ruth Rollerson at 42-43) (alteration in original). These allegations, assuming their veracity, are insufficient to recover on an excessive force claim. Specifically, Ruth does not allege a specific injury. Being lifted off her feet is not an injury, *de minimus* or otherwise. Even if Ruth had alleged any injury as a result of being lifted off the ground, the force would not be considered clearly unreasonable since the evidence shows that Ruth was physically resisting arrest and posed a risk to the officers present at the time of her arrest. Accordingly, Ruth's claim for excessive force is **DISMISSED WITH PREJUDICE**.

### *Manning Rollerson Jr.*

The following is Manning Jr.'s **entire** argument in support of his excessive force claim:

> Officers beat the living crap out of me. Officer Botello picked me up and slammed me. When he slammed me, I landed on my back area, and I was kicked over. When I was kicked over, they put a

> knee on my back and handcuffed me. Then he threw double handcuff on me.

Pls.' Resp. at 8. Manning Jr. also fails to allege a specific injury or provide any evidence of one. Claiming that officers "beat the living crap" out of him is inflammatory but unhelpful, especially since it lacks any additional evidentiary support. Manning Jr. does not allege a part of the body that was injured or that he sought or received medical treatment. In addition, the officers involved were justified in using force since Manning Jr. punched Officer Botello in the mouth and tried to take his gun. As the Court previously mentioned, Officer Botello is not even a defendant in this case, so even if Manning Jr. alleged facts sufficient to recover on an excessive force claim (which he does not), he would not be able to recover against any of the defendants named in this lawsuit. Accordingly, Manning Jr.'s excessive force claims are **DISMISSED WITH PREJUDICE**.

### *Maria Rollerson*

The following is Maria's **entire** argument in support of her excessive force claim:

> He (the officer) picked me up and threw me over the railing and I hit the ground. After that is when a swarm of them came over me. I got kicked in my side. My right side, actually. And kicked in my face also.

Pls.' Resp. at 9. Again, Maria has alleged actions she found offensive without actually alleging an injury. There is no medical evidence of injury. She does not contend that any body part was bruised, bleeding, or otherwise manifesting injury. Without a specific allegation of injury, there can be no claim for excessive force. In any event, Maria had already punched Officer Cardoza in the face, and she was physically resisting arrest. Accordingly, the Court finds that any force which can be inferred from Maria's allegations was not clearly unreasonable, and her claim for excessive force is **DISMISSED WITH PREJUDICE**.

### 3. First Amendment Claims

According to Plaintiffs' Response, Manning Sr. is the only Plaintiff asserting a First Amendment violation. Specifically, Manning Sr. "claims that Officer Gilliam retaliated against him for exercising his First Amendment free speech right by striking and arresting him for saying he would not come off his porch and that he had a right to stand on his porch." Pls.' Resp. at 5. That Manning Sr. spoke before he was arrested is not enough to establish a First Amendment violation. To make a claim for retaliation, a plaintiff must show (1) a specific constitutional right, (2) defendant's intent to retaliate against the plaintiff for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation, *i.e.*, "but for the retaliatory motive, the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).

In a First Amendment case, the plaintiff must show that the speech allegedly retaliated against was indeed protected speech. Specifically excluded from the arena of protected speech are "fighting words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 769, 86 L. Ed. 1031 (1942). Manning Sr.'s words were fighting words in that they tended to incite an immediate breach of the peace. While standing in a darkened area with approximately fifteen other people, some of whom may have fled from across the street, Manning Sr. engaged in offensive, vulgar and malicious language toward the police officers. This language would naturally tend to inflame the emotions of the others present. In this case, the group of fifteen would have substantially outnumbered the officers then present. This breach of the peace could have lead to serious injury to onlookers and officers alike.

In any event, the Court finds that Plaintiff's claim flatly fails on the fourth requirement. In this case, Manning Sr. appeared to be intoxicated when the officers arrived at the scene. Before Manning Sr. even uttered a word, the police officers had probable cause to arrest him. He cannot escape arrest or confrontation simply by engaging in protected speech once officers arrive on the scene. Additionally, once the officers approached him regarding the intoxication and his refusal to come out into the light, Manning Sr. engaged in further conduct justifying arrest, conduct to which he later pled guilty. Accordingly, he cannot show that but for a retaliatory motive, which there is incidentally no proof of, the arrest would not have occurred. It is for this reason that Plaintiff's First Amendment claims are **DISMISSED WITH PREJUDICE**.

## IV. Conclusion

For the reasons outlined above, all claims against the Individual Defendants in their individual capacities are **DISMISSED WITH PREJUDICE.** The claims against the Individual Defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE**. The only remaining claims are those asserted against the City of Freeport.

**IT IS SO ORDERED.**

**DONE** this 13th day of June, 2007 at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge